## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAHEEM ABDUL RAHMAN, #302554 | : | |
| Petitioner | : | |
| v. | : | CIVIL ACTION NO. WMN-05-1980 |
| JAMES PEGUESE | : | |
| and | | |
| THE ATTORNEY GENERAL OF THE | : | |
| STATE OF MARYLAND | | |
| | : | |
| Respondents | | |

oo0Ooo

### MEMORANDUM

Pending is a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 filed by Raheem Abdul Rahman, a state prisoner, challenging his 2001 conviction in the Circuit Court for Baltimore County for robbery with a deadly weapon. Respondents, James V. Peguese, Warden, Maryland House of Correction and J. Joseph Curran, Attorney General of the State of Maryland, through counsel, have filed a response in opposition and supporting exhibits. Petitioner has filed a reply.

Upon review of the pleadings, the Court finds no need for an evidentiary hearing. See 28 U.S.C. Section 2254(e)(2); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts. For the reasons that follow, the petition will be denied.

### I. Procedural Background

Petitioner was apprehended by police on December 1, 2000, for robbing a Baltimore County pharmacy with a rifle earlier that day. Paper No. 5, Exhibit 4, 65-9, 88-9. The victim identified Rahman, pre-trial and at trial, as one of the perpetrators of the robbery. See id. at 75-77, 110. A

jury sitting in the Circuit Court for Baltimore County convicted Rahman of robbery with a dangerous and deadly weapon.  See id. at 180-81.  The Circuit Court imposed a mandatory sentence of twenty-five years imprisonment without the possibility of parole. Paper No. 5, Exhibit 1.

Rahman filed an appeal in the Court of Special Appeals of Maryland, raising the following claims: 1) the administrative judge erred in failing to comply with Md. Rule 4-215(e);  2) the trial judge erred in finding that his explanation for discharging his attorney prior to trial was non-meritorious; 3) the administrative judge abused his discretion in denying a postponement of trial; and 4) the trial judge erred in refusing to grant him a motions hearing.  Paper No. 5, Exhibit 5 at 2. In an unreported opinion filed on January 23, 2003, the Court of Special Appeals affirmed the conviction. Paper No. 5, Exhibit 8. On May 9, 2003, the Court of Appeals denied certiorari review. Paper No. 5, Exhibit 10.

On June 24, 2004,  Rahman filed for post-conviction relief.  Paper No. 5, Exhibits 11-13. The petition, as supplemented, raised the following claims: 1) trial counsel was ineffective; 2) appellate counsel was ineffective; 3) the trial court violated his Fifth and Sixth rights by not conducting "the requisite voir dire mandated under Maryland Rule 4-215"; and 4) the trial court violated Maryland Rule 4-425. Paper No. 5, Exhibits 11-13.  After a post-conviction hearing on January 13, 2004, the post-conviction court denied the petition.  Paper No. 5, Exhibits 1 & 14.

Rahman, through counsel, then filed an application for leave to appeal the ruling of the post conviction court and  presented the following issues: 1) the post-conviction court erred when it determined that his Sixth Amendment rights were not violated by the trial court's failure to comply with Maryland Rule 4-215 for the effective waiver of counsel; and 2) the post-conviction court erred when it determined that the counsel waiver issue was fully and finally litigated.  Paper No. 5, Exhibit

15. On November 24, 2004, the Court of Special Appeals summarily denied Petitioner's application to appeal from the denial of post-conviction relief. Paper No. 5, Exhibit 16.

## II.  Claims

In support of his 28 U.S.C. §2254 petition for federal habeas relief, Petitioner raises these claims: 1) the trial court violated his Fifth and Sixth Amendment rights by granting his request to discharge counsel without complying with Maryland Rule 4-215; 2) the administrative judge abused his discretion by denying his request for a postponement; and 3) the trial judge violated his right to due process by not holding a motions hearing.  Paper No. 1.

## III  Standard of Review

This  petition is subject to the provisions of the federal habeas statute, 28 U.S.C. § 2254, as amended, which provides a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333 n.7. (1997); see also Bell v. Cone, 543 U.S. 447, 456 (2005) (stating habeas court's standard for evaluating state-court ruling is highly deferential).  A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2)  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000),  Justice O'Connor explained that  a state court decision is "contrary to" clearly established federal law, when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at

412-413.  A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court  identifies the correct  governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409-410.  Furthermore, when a state court has made a  finding of fact, it is presumed to be correct and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## IV. Procedural Default

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies.  See Coleman v. Thompson, 501 U. S. 722, 749-50 ( 1991) (failure to note timely appeal); Murray v. Carrier, 477 U. S. 478 (1986) (failure to raise claim on direct appeal); Murch v. Mottram, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); Bradley v. Davis, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule."  Yeatts v. Angelone, 166 F.3d 255, 260 (4th Cir. 1999).

The procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. See Carrier, 477 U. S. at 495; Wainwright v. Sykes, 433 U.S. 72, 86 (1977). Cause for a procedural default must be more than mistake or ignorance.  Under some circumstances, ineffective assistance of counsel as determined

under <u>Strickland v. Washington</u>, 466 U. S. 668 (1984) may constitute cause. <u>See</u> <u>Edwards v. Carpenter</u>, 529 U. S. 446, 451 (2000).  Otherwise, "in order to demonstrate 'cause' for the default [petitioner] must establish that 'some objective factor external to the defense impeded counsel's [or petitioner's] efforts' to raise the claim in state court at the appropriate time." <u>Breard v. Pruett</u>, 134 F.3d 615, 620 (4th Cir. 1998) (quoting <u>Carrier</u>, 477 U. S. at 488).  Ignorance of the availability of an appeal in a collateral proceeding, even when based on erroneous legal advice, is not cause for not filing a timely appeal. <u>See</u> <u>Tower v. Phillips</u>, 7 F.3d 206, 211 (11th Cir. 1993).

If a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice. <u>See</u> <u>Schlup v. Delo</u>, 513 U. S. 298, 314 (1995).  The miscarriage of justice standard is directly linked to innocence. <u>See</u> <u>id</u>. at 320.   The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Carrier</u>,  477 U. S. at 496.[1]

## V.  Analysis

### A. The Trial Court Failed to Conduct a "Voir Dire" Before Granting Request to Discharge Counsel

#### 1. The Trial Court Failed to Conduct a "Voir Dire"

Petitioner contends the trial court violated his constitutional rights when it failed to conduct "the requisite voir dire" and "investigation" required by Maryland Rule 215 before accepting his waiver of right to counsel and by determining his reasons for discharging his attorney were without merit.  Paper No. 1.  To the extent Petitioner is challenging only the trial court's application of the

---

[1]        Petitioner was granted additional time to reply to Respondent's assertions of procedural default.  Paper No. 6.

Maryland Rules of Procedure, this claim is not cognizable in an action for federal habeas relief. In order for a federal court to review an application for habeas relief, a prisoner must be "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). "[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Assuming the claim is cognizable, it nonetheless is procedurally defaulted. As noted by the state post conviction court, Petitioner failed to raise this claim on direct appeal. Paper No. 5, Exhibit14 at 7-8. On direct appeal, Petitioner argued that his waiver was defective because the administrative judge, as distinguished from the trial judge as is argued here, incorrectly applied Maryland Rule 4-215. Paper No. 5, Exhibit 6-10. In regard to the trial judge, Petitioner complained on appeal that the trial judge had erred in finding his explanation for discharging his attorney prior to trial without merit. The Court of Special Appeals specifically footnoted in its opinion that Petitioner did "not challenge the adequacy of the trial court's compliance with Rule 4-215(e)." Paper No. 5, Exhibit 8 at 7. The first time Petitioner alleged deficient waiver of counsel was in his post- conviction petition. The state post-conviction court rejected this claim determining it waived and without merit. Paper No. 5, Exhibit 14 at 7. For these reasons, this claim is procedurally defaulted.

Petitioner proffers the allegedly deficient assistance by his appellate counsel as cause for the procedural default.[2] Paper No. 8 at 3. See Murray v. Carrier, 477 U.S. 478, 488 (1986)

---

[2] Petitioner also faults his post-conviction counsel for not raising an ineffective assistance of appellate counsel claim. Specifically, he contends post-conviction counsel should have claimed appellate counsel failed to "further concrete the issue of MD. Rule 4-215" before

("[i]neffective assistance ... is cause for a procedural default").   To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  See Strickland v. Washington, 466 U.S. 668, 687 (1984). An inquiry into counsel's conduct examines "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688.  In engaging in such an inquiry, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" especially where counsel's acts may be considered "'sound trial strategy.'" Id. at 689.   To demonstrate that counsel's error was prejudicial, thereby satisfying the second prong of the Strickland test, a habeas petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.   In this case, Petitioner's conclusory statement of blame that appellate counsel "did not argue adequately the adequacy of MD Rule 215" without more any fails to satisfy either test in Strickland. [3]

> 2.  The Trial Court Erred by Finding Reasons for Discharge Without Merit

Petitioner also claims that the trial court erred by determining that his reasons for discharging counsel were without merit.  Petitioner raised this issue on direct appeal, and it was rejected by the

---

the state post-conviction court.  Paper No. 8 at 6.  There is no constitutional right to counsel in post-conviction proceedings, and a claim of ineffective assistance of post-conviction counsel cannot serve as cause to excuse a procedural default. See Coleman, 501 U.S. at 752-53; Mackall v. Angelone, 131 F.3d 442, 449 (4th Cir. 1997).

[3]     Petitioner does not contend he is innocent of the offenses for which he has been convicted. There was ample witness testimony and physical evidence introduced at trial to support the conviction.  Paper No. 5, Exhibit 3.

Court of Special Appeals of Maryland.   The appellate court stated:

> An eleven-count criminal information charged appellant with various offenses arising from two armed robberies. He was arraigned on January 23, 2001, and trial initially was scheduled for March 12, but was postponed four times. One postponement occurred because appellant was unprepared for trial and another when he failed to appear.  On November 20, appellant appeared before the administrative judge and requested a postponement of trial that was scheduled for that day. The following colloquy occurred:
>
>> [APPELLANT'S COUNSEL]:  [Appellant] wants a postponement.
>>
>> THE COURT:  Why, Sir?
>>
>> [APPELLANT]:  I'm not prepared for trial. I didn't know I was going to court today. I'm not even dressed in any type of manner for trial.
>>
>> THE COURT: What is the State's position?
>>
>> [STATE]:  The State is opposed.  State's witnesses are here.
>>
>> THE COURT:  The case was postponed once by me on the 8th of March then because of a conflict in schedule with the co-defendant, then it was postponed in May by defendant and reset to June. [Appellant] FTA'd and was picked up on a murder charge in the city, then sent–he wasn't brought because he had been transferred from DOC. Now we're here today.
>>
>> * * * * * * * * * * * * * *
>>
>> THE COURT: O.K. postponement denied.
>>
>> [APPELLANT]:  I object to that. The reason for the postponement is because I'm getting a new lawyer. I fired my lawyer.
>>
>> THE COURT:  Too late.  On January 23rd you were told to get a lawyer then.
>>
>> [THE COURT]: Then you are going to trial without one. It's up to you.

Paper No. 5, Exhibit 8 at 1-3.  The administrative judge then assigned the case to another judge for

trial. Prior to the start of trial, appellant requested permission to discharge counsel, explaining:

> [APPELLANT]: Well, sir, I am not prepared for trial, I didn't know I was going to court until today.  I have no-
>
> * * * * * * * * * * * * *
>
> Well, because I found out about, supposed to be–attorney's not trying to help me, he 's working with the State against me and also tried to coerce a witness to testify against me in court.
>
> THE COURT:  Why do you feel your attorney is working with the State against you?
>
> [APPELLANT]: Well, because he tried to coerce the witness to testify against me, and as an attorney he should be trying to coerce a witness to testify for me in my behalf.  And as well since this case we haven't went over this case or have made any preparations for this case today. I am brought up here in front of you, I do not even know that I am supposed to go to court today.
>
> * * * * * * * * * * * * *
>
> THE COURT: [Appellant's counsel],  I want to ask you, what can you tell me about [appellant's] claim that you are work, coercing witnesses to testify against him?
>
> [APPELLANT'S COUNSEL]:   Well, you Honor, obviously that is totally false. He has a witness who's the co-defendant in this case, who previously pled guilty and obviously wanted him as a witness in his behalf.  I actually advised him against this. I did go down to boot camp in Jessup and talk to the co-defendant.
>
> * * * * * * * * * * * * *
>
> He told me exactly what I had expected he was going to say, that he was not in this by himself... I think I told him that [appellant] was going to ask for him as a witness and his obligation was to tell the truth.  And that was it, but certainly did not tell him that he could testify against [appellant].
>
> THE COURT: I have heard your request for the discharge [of counsel] in this case. I find no meritorious reason for your request.

Paper No. 5, Exhibit 8 at 1-4.  Petitioner then told the court he was improperly dressed for trial.  The

trial court observed that Petitioner was wearing jeans and a sweat shirt without any markings that would identify his attire as prison-issued.  The trial court informed him that his trial would proceed as scheduled even if he was unrepresented by counsel.  The trial court ascertained that Petitioner had been provided a copy of the criminal information, informed of his right to counsel, and advised of the nature of the charges and the allowable penalties.  Petitioner repeated his request to discharge counsel.  The trial court granted the request, and the Petitioner proceeded to trial pro se.

The Court of Special Appeals of Maryland observed:

> Appellant argues that when he requested permission to discharge counsel, the administrative judge failed to comply with Maryland Rule 4-215(e). He asserts that the "requirements of Rule 4-215(e) can only "be satisfied by an administrative judge.["] He also contends that, because counsel "Was working against his best interest," the trial court erred by finding no meritorious reason to discharge counsel.

Rule 4-215(e) provides:

> Discharge of Counsel-Waiver- If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request.  If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a) (1)-(4) of this Rule if the docket or file does not reflect prior compliance.

Paper No. 5, Exhibit 8 at  4-5.  The appeals court noted that the purpose of this provision is to protect the fundamental right to effective assistance of counsel, "'basic to our adversary system of criminal justice, and which is guaranteed by the federal and Maryland constitutions to every defendant in all criminal prosecutions.'" Moten v. State, 339 Md. 407, 411 (1995) (quoting Parren

10

v. State, 309 Md. 260, 281-82 (1987).   The appellate court determined:

> When appellant appeared before the administrative judge, he requested a postponement of trial because he was neither prepared nor dressed appropriately. After the request was denied, appellant did not ask permission to discharge counsel, but instead indicated that he had just "fired  [his] lawyer." Without complying with Rule 4-215(e), the administrative judge responded that appellant would have to proceed to trial unrepresented by counsel. Any error was harmless, however, because the trial court complied with that rule.
>
> Rule 4-215(e) does not require that the administrative judge determine whether counsel may be discharged. Unlike Rule 4-271(a)(1), which only allows a "county administrative judge or designee" to postpone a circuit court trial date, Rule 4-215(e) only requires that "the court" take certain actions before discharging counsel.

Paper No. 5, Exhibit 8 at 6-7.   The appellate court observed that  when Petitioner requested permission to discharge counsel before  trial, the trial court complied with Rule 4-215(e). Appellant was allowed to explain his reasons, *i.e.* he alleged his counsel "was working with the State" and "tr[ying]to coerce [the co-defendant] to testify against [him] in court." Paper No. 5, Exhibit 8 at 3. Counsel categorically refuted these allegations.  Finding no meritorious reason for the discharge, the trial court cautioned, " I want to advise you that if you [discharge counsel], you would have to represent yourself at trial today.  The case is going forward today."  Paper No. 5, Exhibit 8 at 7. The trial court continued:

> THE COURT:  I assume you have received a copy of the charges that are against you, sometime in the past?
>
> [APPELLANT]: I have.
>
> THE COURT:  I want to tell you that you have a  right to be represented by the Public Defender. The Public Defender can render valuable assistance to you both in the guilt/innocence phase, as well as the sentencing phase if you are found guilty. A lawyer knows what motions to make. A lawyer knows what motions, objections to make.  I would urge you not to discharge the lawyer that you have, that can be of tremendous assistance to you.  I can tell you I think it would be very difficult for you to go through a trial without the

assistance of counsel. The charges that you are facing as you are aware, are robbery with a dangerous and deadly weapon, and I believe it's a first degree assault.  Robbery with a dangerous and deadly weapon carries a maximum sentence of 20 years. First degree assault carries a maximum sentence of 45 years imprisonment.

Paper No. 5, Exhibit 8 at 7-8.

The state post-conviction court also rejected the claim that Petitioner had a valid reason for

discharging counsel. It stated:

Petitioner, up to the point of trial, was represented by Mr. William Guiffre who is an Assistant Public Defender.  The case had been called a couple of times and been postponed, and on November 20th, of 2001, Petitioner asked for another postponement and Judge Turnbull said that push had come to shove, no more postponements we are going to try this case, and Mr. Rahman expressed unhappiness with his lawyer and Judge Turnbull, who was the Administrative Judge, turned down the request for postponement and he sent the case to Judge Levitz for trial.  In front of Judge Levitz, Mr. Rahman said that he wanted to fire his lawyer. He was unhappy with his lawyer and he was unhappy because Mr. Guiffre would not call Mr. King as a witness on behalf of the Defendant.

Let me just talk about that real fast. Mr. King[4] pled guilty to this crime in front of Judge Hennigan, and he had admitted he participated and he said that, as part of the statement of facts, that the crime was Mr. Rahman's idea and that he went along with Mr. Rahman.  Mr. Guiffre was a witness to that, he had gone down and watched his plea, then he went and talked to Mr. King about what he could do to help Mr. Rahman and the answer to that was he couldn't do anything to help Mr. Rahman because he had committed himself to his version of it in the courtroom at the guilty plea, although, as we later learn, that didn't stop him from changing his testimony in Mr. Rahman's case, but Mr. Guiffre said, well, I can't call him because if he comes in and says it was all my idea, you know, he would be lying under oath, and Mr. Guiffre wasn't going to be any part of that.  So he told Petitioner, he said he's not going to be of any help to you. Petitioner was upset because he thought that King would, in fact, tell people.  So that's why he wanted to fire Mr. Guiffre.

Paper No. 5,  Exhibit 14 at 2-4.

An essential element of the Sixth Amendment's protection of right to counsel is that a

---

[4]       King was Petitioner's co-defendant.

defendant must be afforded a reasonable opportunity to secure counsel of his own choosing. <u>See</u> <u>Powell v. Alabama</u>, 287 U.S. 45, 54 (1932).   However, the right to counsel of defendant's own choosing is not absolute.  <u>See</u> <u>Sampley v. Attoney General of North Carolina</u>, 786 F.2d 610, 612-13 (4th Cir. 1986).  An indigent defendant has no right to a particular attorney and can demand new counsel only for good cause.   <u>See</u> <u>United States v. Gallop</u>, 838 F.2d 105, 108 (4th Cir. 1988).   A defendant does not have an absolute right to substitution of counsel.  <u>See</u>  <u>United States v. Mullen</u>, 32 F.3d 891, 895 (4th Cir. 1994).  The determination of whether or not the motion for substitution of counsel should be granted is within the discretion of the trial court, and the court is entitled to take into account the countervailing state interest in proceeding on schedule. <u>See</u>  <u>Morris v. Slappy</u>, 461 U.S.1, 13 (1983).  In evaluating whether the trial court abused its discretion in denying counsel's motion to withdraw, this court must consider: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry; and (3) whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense. <u>See</u> <u>Gallop</u>, 838 F.2d at 108.

In this case, Petitioner announced his decision to fire his counsel on the day of trial.  Further, the trial court conducted an adequate inquiry into Rahman's  reasons for discharging his counsel, and concluded that his refusal to proceed with his attorney was without merit. The record shows the trial judge strongly cautioned Petitioner about the dangers and disadvantages of self-representation, especially in light of the serious charges and long prison terms he faced if convicted.  Moreover, there was no evidence that the communication between Petitioner and his attorney was such as to prevent him from receiving adequate representation. Indeed, the record shows counsel visited and interviewed the co-defendant, even though counsel advised against having him testify on Petitioner's behalf.

A state court's findings of fact are presumed correct under the highly deferential standard of review that applies to 28 U.S.C. § 2254 petitions.  The record demonstrates Petitioner's claims were thoroughly considered, and the state courts' decisions are well-supported.  There is no cause shown for the award of federal habeas relief.

B.  The Administrative Judge Improperly Denied Postponment

Petitioner's next claim is that the administrative judge abused his discretion by denying his request for a postponement.  By challenging only the court's application of the Maryland Rules of Procedure, Petitioner has failed to raise a claim cognizable in an action for federal habeas relief.  See 28 U.S.C. §2254(a); Spencer v Murray, 18 F.3d 237, 239-40 (4th Cir. 1994).

Even if  this claim were cognizable, however, it does not warrant the granting of habeas relief, as it was raised and rejected on direct appeal for the following reasons:

> Appellant argues that the administrative judge abused his discretion by not postponing trial. Under Rule 4-271(a)(1), an administrative judge may "grant a change of a circuit court trial date" if good cause is shown.  The judge's determination is "'a discretionary matter, rarely subject to reversal upon review.'" State v. Fisher, 353 Md. 297, 306, 726 A.2d 231 (1991) (quoting State v. Frazier, 298 Md. 422, 430, 470 A.2d 1269 (1984)).  It will be reversed "only if there was both an abuse of discretion and a showing of actual prejudice because of the ruling." Frazier, 298 Md. at 452.
>
> Appellant requested a postponement because he was "not prepared for trial" and did not know that he "was going to court" that day. Previously, the case had been postponed four times. One occurred because he was unprepared for trial and another because he failed to appear.  Moreover, appellant had been arraigned in January.  Because ten months had transpired since appellant's first appearance in court, there was no evidence that appellant did not have adequate time to prepare for trial.  As such, no good cause was shown and the administrative judge did not abuse his discretion by denying appellant's request.

Paper No. 5, Exhibit 8 at 8-9.  A denial of a motion for a continuance that constitutes "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for

delay' " is both abusive and violates an accused's Sixth Amendment right to assistance of counsel.

See Morris, 461 U.S. at 11-12  (quoting Ungar v. Sarafite, 376 U.S. 575, 589, (1964).  Furthermore,

due process protections are implicated only when the denial is arbitrary and fundamentally unfair.

See United States v. Sellers, 658 F.2d 230, 231 (4th Cir.1981).  Such arbitrary abuse is not present

here.  Petitioner provided no justifiable basis for postponing a case that had already been delayed

several times.  Under these facts, and in light of the standard of review applicable to 28 U.S.C. §

2254 motions, there is no cause to disturb the state court's determination.

    C.      The Trial Court Failed to Conduct a Motions Hearing

      Petitioner next claims the trial court improperly failed to hold a motions hearing.  On direct

appeal, he claimed the trial court erred by denying his request for a hearing on a motion to suppress

a pre-trial identification.[5]  The Court of Special Appeals rejected this claim as follows:

> Appellant contends that the trial court erred by not conducting a suppression hearing concerning a pre-trial identification. Prior to the start of trial, the trial court requested that appellant submit a witness list to be used during the voir dire of the jury panel.   The following colloquy occurred:

>> THE COURT: [Appellant], are there any witnesses that you intend to call, because if there are I need to read their names to the jury.

>> [APPELLANT]:  Well, if the State- I want to know if the State is calling him.

>> [STATE]:   The State does not intend to call [the co-defendant].

>> [APPELLANT]: Well then I intend to call [the co-defendant]

>> THE COURT: Okay.

>> * * * * * * * * * * * * * * *

>> [APPELLANT]:   Because like to view any evidence that the State would

---

[5]     In the instant petition, Petitioner does not specify  the identification to which he refers nor the reasons why it should have been suppressed.

> like to put forward to the court, I like to view all that information beforehand, before trial.
>
> THE COURT: Well, sir, unfortunately the trial is now.
>
> [APPELLANT]: Well, I like to view it, could you then, if it's anything that the State has for evidence as part of my right I like to view all the evidence that the State has.
>
> THE COURT: Sure, that's your right to ask to do that. And you do that in advance.  And unfortunately nobody has asked to do that [in] advance.
>
> [APPELLANT]: I did ask to do that in advance, no I am asking to have motions hearing now, as you see-
>
> THE COURT: Not having any motions hearing now, sir. We are having trial now. Jury's on the way up from downstairs.

Paper No. 5, Exhibit 8 at 9-11.   The trial judge then asked the State's Attorney, "If it is a fairly easy thing, although Defendant is not entitled to it at this moment I will, if it's relatively short, I will let you show him what you intend to introduce.  At this point, Rahman stated to the Court, "I appreciate that, Your Honor.  Thank you, very much.

The appeals court then observed:

> Ordinarily, we "will not decide [an issue] unless it plainly appears by the record to have been raised in or decided by the trial court." Maryland Rule 8-131(a); see Reynolds v. State, 327 Md. 494, 502-03, 610 A.2d 782 (1992); Brashear v. State, 90 Md. App. 709, 720, 603 A.2d 901 (1992);  Timms v. State, 83 Md. App. 12, 19 at f. 5, 573 A.2d 397 (1990).

Paper No. 5, Exhibit 8 at 11. The appellate court determined that Petitioner had not requested suppression of the victim's pre-trial identification. Paper No. 5, Exhibit 8 at 11. Petitioner had requested access to the State's evidence and then made a general request for a "motions hearing." Id.  After the trial court permitted him to review the State's evidence, he did not pursue his request.

16

Consequently, the court determined the claim procedurally defaulted.[6]   The court's decision was neither contrary to nor involved an unreasonable application of federal law,  nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court, <u>See</u> 28 U.S.C. 2254(d).  Therefore, Petitioner has not met the standard for federal habeas relief. Accordingly, this claim will be denied.

## VI.  Conclusion

For these reasons,  the  petition for habeas corpus relief will be denied. A separate Order follows.


___May 18, 2006___                    _____/s/_____
Date                                  William M. Nickerson
                                       Senior United States District Judge

---

[6]      As noted earlier, the victim identified Petitioner at trial.  Thus, even if the pre-trial identification had been suppressed, witness testimony was presented to sustain the conviction.